**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STEVEN D. BURKE,

      Petitioner,

    v.

WARDEN, NEIL TURNER,

      Respondent.

CASE NO. 2:16-CV-01076
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this petition be **DENIED** and that this action be **DISMISSED**.

### I. FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On January 23, 2013, the Franklin County Grand Jury indicted Burke on one count of felonious assault with specification, in violation of R.C. 2903.11, a felony of the second degree, and one count of having a weapon while under disability, in violation of R.C. 2923.13, a felony of the third degree.
>
> Jamacan Sizemore ("Sizemore") testified that shortly after noon on January 8, 2013, he was working on cars in the parking lot of an apartment complex near 870 Wedgewood Avenue, in Columbus, Ohio. Sizemore testified that he heard someone say "what's up now?" and he turned and saw Burke, whom he had known for approximately 17 years, standing within 5 feet of a "little silver car." (Tr. 91, 96.) Burke had a handgun and shot Sizemore 6 times. Burke then jumped into the passenger seat of the car and left. (Tr. 87–98.) Witnesses, Christopher Thornton and Juanita Stewart, testified that after the shooting, the gunman ran or "speed walked"

a short distance to the silver car and "hopped in and took off." (Tr. 335, 372.)

Burke argued that due to prior injuries, he was physically unable to commit the crime and "run" from the scene. His mother, Sharon Ross, and sister, Tamirra Burke, testified that he walked with a limp and used a cane and/or a walker at the time of the shooting. (Tr. 483–87, 500–06.)

At first, Sizemore did not cooperate with the police. (Tr. 104–10.) However, eventually he identified Burke as the assailant, and later testified that he had "no doubt" Burke was the shooter because he saw him and looked "dead in his face" as Burke pulled out a gun and shot him. (Tr. 92–98, 108–10.)

Paul Dille testified that he drove Burke to the area of the shooting, and that Burke pulled a gun out of his waistband and exited Dille's car when Burke saw Sizemore. Burke did not have a cane and was not walking with a limp that day. Dille says he heard the shots but did not actually see the shooting. Burke got back into the car quickly, pointed his gun at Dille and told him to "go." (Tr. 430.) Dille complied and drove Burke away. Another witness, Dylan Roller, testified that Dille was very upset shortly after the shooting, and that Burke told Dille to get rid of the car. (Tr. 282–84.)

The jury convicted Burke of felonious assault with a gun specification. The court convicted Burke of having a weapon while under a disability. He was sentenced to 10 years in prison.

II. ASSIGNMENT OF ERROR

Burke appeals, assigning the following errors:

I. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL THEREBY DEPRIVING HIM OF THE RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.

*State v. Burke*, No. 15AP-54, 2016 WL 853181, at *1–2 (Ohio Ct. App. Mar. 3, 2016). On March 3, 2016, the appellate court affirmed the judgment of the trial court. *Id*. On June 29,

2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Burke*, 146 Ohio St.3d 1430 (Ohio 2016). On April 22, 2016, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 11-1, PageID# 180). The appellate court denied the Rule 26(B) application due to Petitioner's failure to include a sworn statement as required by App. R. 26(B)(2)(d). (PageID# 197). On October 13, 2016, the appellate court denied Petitioner's application for reconsideration. (PageID# 211). Petitioner did not file an appeal to the Supreme Court of Ohio.

On November 10, 2016, Petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the evidence is constitutionally insufficient to sustain his convictions (claim one); that he was denied the effective assistance of trial counsel because his attorney failed to present evidence establishing that Petitioner was physically incapable of committing the crimes charged due to his physical health and vision and failed to obtain a key witness for the defense (claim two); and that he was denied due process by use of an unduly suggestive photographic identification procedure (claim three). It is the position of the Respondent that claims one and two are without merit and that claim three is unexhausted or procedurally defaulted.

## II. DISCUSSION

### A. Procedural Default (Claim Three)

#### 1. Standard

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction

between the state and federal courts, a state criminal defendant with federal constitutional claims must first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). However, where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas[.]" *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *abrogated on different grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). In other words, "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

4

sufficient to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id*.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

*2. Application*

In claim three, Petitioner asserts that the prosecution's use of an unduly suggestive photographic identification procedure violated his due process rights. Although somewhat confusing, Respondent argues that this claim is procedurally defaulted. (*See* Doc. 11 at 15 (arguing procedural default); *but see id.* at 8–14 (arguing claim three is unexhausted and for dismissal of the claim on the merits)). Petitioner counters that he "presented all of his claims as required by law." (Doc. 12 at 7). The record, however, shows otherwise. It is clear that Petitioner did not present claim three on direct appeal. (*See* Doc. 11-1, Ex. 8).

Because Petitioner did not present this claim on direct appeal, Ohio's doctrine of *res judicata* now bars his ability to raise such claims in the state courts. *See State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967) (holding that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*); *see also State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982); *State v. Ishmail*, 423 N.E.2d 1068, 1070 (Ohio 1981). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of procedurally barred claims. *See Cole*, 443 N.E.2d at 170–71; *Ishmail*, 423 N.E.2d at 1070.

Further, the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Finally, with respect to the final *Maupin* factor, the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that *res judicata* rule articulated in *Perry* is an adequate and independent ground for denying relief.

As explained, however, Petitioner may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] ' . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). In his brief, Petitioner notes that he is pro se. (Doc. 12 at 7–8). A petitioner's pro se status, ignorance of the law, or ignorance of procedural requirements, however, are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

Further, the denial of the effective assistance of appellate counsel cannot constitute cause for Petitioner's procedural default because Petitioner has likewise procedurally defaulted this

claim, as the state appellate court denied his Rule 26(B) application for failure to comply with App. R. 26(B)(2)(d). *See Gooden v. Bradshaw*, No. 5:12-cv-2139, 2014 WL 4245951, at *10 (N.D. Ohio Aug. 25, 2014) (enforcing the procedural default on this same basis); *Belcher v. Smith*, No. 1:09-cv-627, 2010 WL 256501, at *5–6 (N.D. Ohio Jan. 21, 2010) (same).

At base, Petitioner has not argued, nor does the record reflect, that his procedural default can be excused by any explanation that would be sufficient under *Murray v. Carrier*. Thus, claim three is procedurally defaulted.

### B. Merits (Claims One and Two)

#### *1. Standard*

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, AEDPA's familiar standards apply. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––U.S. ––––, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## 2. Application

### i. Claim One

Petitioner asserts in claim one that the evidence is constitutionally insufficient to sustain his convictions. The state appellate court rejected this claim on the merits:

> Burke argues that the evidence was insufficient to support his convictions. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259 (1991).
>
> A challenge to the sufficiency of the evidence is properly made where a defendant asserts that the state failed to produce any evidence related to one or more elements of an offense. Burke has not raised any arguments regarding the sufficiency of the evidence. Instead, Burke asserts that the state's witnesses lacked credibility. As such, in the interest of justice, we will construe Burke's first assignment of error as raising both sufficiency and manifest weight of the evidence issues.
>
> This court in *State v. Baatin*, 10th Dist. No. 11AP–286, 2011–Ohio–6294, ¶ 811, addressed the applicable law:
>
> ***
>
> Burke argues that the state's witnesses lacked credibility. Burke claims that he "is serving a ten-year sentence primarily because two people identified" him as the shooter. (Appellant's Brief, 15.) Burke alleges that Sizemore is not believable because he initially denied to the police knowing who shot him. Burke attacks Dille's testimony because, at the time of the shooting, Dille was a "drug addict" who was "currently using heroin" and had severe "mental health issues." (Appellant's Brief, 16.)

9

> Firstly, "[a] conviction is not against the manifest weight of the evidence because the jury chose to believe the state's version of events over the defendant's version." *State v. Hawk*, 10th Dist. No. 12AP–895, 2013–Ohio–5794, ¶ 59. A lack of physical evidence does not warrant interfering with the jury's decision or preclude a conviction. *See State v. Hunter*, 10th Dist. No. 10AP–599, 2011–Ohio–1337, ¶ 24. In addition, the testimony of one witness, if believed by the jury, is enough to support a conviction. *State v. Strong*, 10th Dist. No. 09AP–874, 2011–Ohio–1024, ¶ 42.
>
> Sizemore testified that he had known Burke for a long time and that, without any doubt in his mind, Burke was the person who had shot him. Dille testified that he drove Burke to the scene, saw Burke pull out a gun immediately after seeing Sizemore, saw Burke exit the vehicle, heard the gunshots, and drove Burke away from the scene.
>
> Based on the guilty verdict, the testimony of Sizemore, Dille, and others, convinced the jury that Burke was the shooter. The jury was in the best position to evaluate the witnesses' credibility, and there is no persuasive reason for rejecting that determination.
>
> . . . We find that the evidence in the record supports the jury's and court's verdicts. Accordingly, Burke's convictions are not against the manifest weight of the evidence. This conclusion is also dispositive of Burke's claim that his convictions are not supported by sufficient evidence. *State v. McCrary*, 10th Dist. No. 10AP–881, 2011–Ohio–3161, ¶ 17. Therefore, we overrule Burke's first assignment of error.

*Burke*, 2016 WL 853181, at *2–3.

In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear

in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson*, 443 U.S. at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 567 F.3d 191, 205 (6th Cir. 2009). Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so here.

At trial, the jury heard testimony from two key eyewitnesses, Paul Dille (the getaway driver) and Jamacan Sizemore (the victim). Dille, Petitioner's acquaintance, testified that the two had an arrangement whereby he would drive Petitioner around in exchange for drugs. (Doc. 11-4, PageID# 622). On the day of the shooting, Petitioner directed Dille to drive to the crime scene, the Wedgwood Apartment Complex. (PageID# 628). Once they arrived, they circled the parking lot; Petitioner eventually pulled out a gun and pointed it in Dille's face. (PageID# 636–37). Petitioner exited the vehicle, and Dille then heard five or six shots. (PageID# 638–69). Petitioner returned to the car, and, according to Dille's testimony, threatened to kill Dille and his family. Dille then drove himself and Petitioner away from the scene. As part of Dille's testimony, the prosecution showed the jury video footage from the Wedgewood Apartments

security camera, which showed a car circling the parking lot immediately prior to the shooting. Dille identified the circling car as his own and the driver as himself. (PageID# 632).

Sizemore testified that he was in the Wedgewood Apartment parking lot working on his car right before he was shot. (Doc. 11-3, PageID# 299). He heard someone say, "What's up now?" (PageID# 302.) He then saw Petitioner, whom Sizemore had known since he was 13- or 14-years-old, standing next to a car. (PageID# 303). Petitioner started shooting. (*Id.*). Sizemore identified Petitioner as the shooter: "I know who shot me. I seen him, I looked at him dead in his face, I know him." (PageID# 304). Sizemore further testified that he was 100 percent sure of his identification of Petitioner as the shooter. (PageID# 305). Sizemore was shot six times—once in the back, twice in his left leg, and three times in his right leg. (PageID# 308). He lost his right leg and shattered his knee. (PageID# 313–15).

In addition to Dille and Sizemore, Christopher Thornton and Juanita Stewart, testified. They lived at the Wedgewood Apartments at the time of the shooting and happened to be in the parking lot when Sizemore was shot. (*See, e.g.*, Doc. 11-4, PageID# 566). Their vehicle can be seen in the security surveillance footage. (PageID# 566). Both Thornton's and Stewart's testimonies corroborated Dille's and Sizmore's accounts. (PageID# 530–549; PageID# 566–579). They testified that they heard gunshots; saw Sizemore fall to the ground; and then witnessed the shooter run to a silver car, hop in, and speed away. (*Id.*).

This constitutes sufficient evidence to sustain Petitioner's convictions. Moreover, as discussed, "[e]ven if a review of the evidence leads to the conclusion that no rational trier of fact could have found guilt beyond a reasonable doubt," this Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Harris v. Morgan*, No. 1:10CV2351, 2011 WL 8184198, at *16 (N.D. Ohio Nov. 2, 2011) (citing *Durr v. Mitchell*,

847 F.3d 423, 449 (6th Cir. 2007); *White*, 602 F.3d at 710). Applying this standard of review, Petitioner is not entitled to relief. To the contrary, the state appellate court appropriately viewed the evidence in the light most favorable to the prosecution and reasonably concluded that the evidence is constitutionally sufficient to sustain Petitioner's convictions. Consequently, claim one is without merit.

### ii. Claim Two

In claim two, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to present evidence that would have established that he was physically incapable of committing the crimes charged. Petition (Doc. 1, PageID# 7). Specifically, Petitioner claims that medical reports would have assisted the defense. Reply (Doc. 12, PageID# 906). Like claim one, the state appellate court rejected claim two on the merits:

> Burke argues in his second assignment of error that he was denied effective assistance of counsel because his attorney failed to present doctor's statements that would have demonstrated that Burke was physically incapable of committing the crime due to his physical health and eye vision. We disagree.
>
> To establish a claim of ineffective assistance of counsel, defendant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Burke must show that (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant. *Id.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id*. at 697. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *State v. Bradley*, 42 Ohio St.3d 136, 143–44 (1989).
>
> A claim of trial counsel ineffectiveness usually will be unreviewable on appeal because the appellate record is inadequate to determine whether the omitted objection, motion, or defense really had merit and/or because the possible reasons for counsel's

13

> actions appear outside the appellate record. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995), *en banc*.
>
> Ohio law similarly recognizes that error cannot be recognized on appeal unless the appellate record actually supports a finding of error. A defendant claiming error has the burden of proving that error by reference to matters in the appellate record. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). There must be sufficient basis in the record upon which the court can decide that error. *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 342 (1986).
>
> In this case, Burke points to nothing in the record to support this claim. In fact, the record does not contain any evidence that such doctor's statements actually existed. In the absence of any indication that there was some medical evidence of his alleged physical limitations to be presented, Burke cannot overcome the presumption that his counsel was effective. Furthermore, Burke cannot show that he was prejudiced in any manner by the actions or inactions of his counsel. As a result, Burke's second assignment of error lacks merit. Accordingly, the second assignment of error is overruled.

*State v. Burke*, 2016 WL 853181, at *4.

"In all criminal prosecutions," the Sixth Amendment affords "the accused ... the right ... to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness.'" *Poole v. MacLaren*, No. 12–1705, ––F. A'ppx ––––, 2013 WL 6284355, at *5 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir.

2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Poole*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court observed that while "'[s]urmounting *Strickland*'s high bar is never ... easy.' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id*. (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)) (and citing *Strickland*, 466 U.S. at 689). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Petitioner has failed to establish the denial of the effective assistance of counsel under the two-prong *Strickland* test. Sharon Ross, Petitioner's mother, testified as a defense witness that in January 2013, Petitioner "was just being able to get around a little bit" after having been released from the hospital in September from injuries suffered as the result of a gunshot wound.

15

Transcript, Vol. III (Doc. 11-4, PageID# 691–93). He had been shot in the leg and limped. (PageID# 694). He used a walker and a cane and could not move quickly. (PageID# 695). Tamirra Burke, Petitioner's sister, also testified as a defense witness that Petitioner had been shot in July 2012 six or seven times in the stomach and leg. (PageID# 708). He was in a coma for a long time, and had been released from the hospital in the fall of 2012. (PageID# 708–09). In January 2013, he was "barely. . . getting around." (PageID# 711). Thus, it is clear that counsel presented this defense. The jury simply did not believe it. Instead, they believed witnesses, like Dille, who testified that Petitioner did not have a cane or walk with a limp on the day of the shooting. (*See* PageID# 640).

Further, as the state court noted, "[Petitioner] points to nothing in the record to support this claim. In fact, the record does not contain any evidence that such doctor's statements actually existed. In the absence of any indication that there was some medical evidence of his alleged physical limitations to be presented, Burke cannot overcome the presumption that his counsel was effective." *State v. Burke*, 2016 WL 853181, at *4. Considering all of this, the Court concludes that the state court reasonably applied *Strickland* to claim two and properly rejected it.

## III. RECOMMENDED DISPOSITION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this petition be **DENIED** and that this action be **DISMISSED**.

### Procedure on Objections

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) ("[F]ailure to object to the magistrate judge's recommendations constituted a waiver of [the] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: November 7, 2017             /s/ Kimberly A. Jolson
                                   KIMBERLY A. JOLSON
                                   UNITED STATES MAGISTRATE JUDGE